Pavela and wife, Plaintiffs and Appellants, v. Fliesz and others, Defendants: Dielmann and wife, Defendants and Respondents.

*February 5—March 2, 1965.*

For the appellants there was a brief by *Phillips & Richards* of Kenosha, and oral argument by *Charles J. Richards.*

For the respondents there was a brief by *Cotton & Rose* and *William S. Rose,* all of Kenosha, and oral argument by *William S. Rose.*

FAIRCHILD, J.   Prior to 1948, Mr. and Mrs. John Zapf owned both parcels involved in this action. They had lived in a house on the southerly (Pavela) parcel, and they built a house on the northerly (Dielmann) parcel, into which they moved. In March, 1948, they conveyed the southerly house and lot to a Mr. and Mrs. Sheridan, predecessors of the Pavelas. The land was described, in material part, as follows:

". . . Commencing at the point which is ten hundred seventy-one (1071) feet west of the east line of said quarter section and six hundred seventy-three and 75/100 (673.75) feet north of the south line thereof; thence east one hundred twelve and 66/100 (112.66) feet to the west line of 33rd Avenue; thence north on the west line of 33rd Avenue, forty (40) feet; thence west one hundred twelve and 66/100 (112.66) feet; thence south, parallel with the west line of 33rd Avenue, forty (40) feet to the place of beginning, said premises to be known as lot eighteen (18) in block twelve (12) of First Addition to Kenosha Center, when same is placed on record; . . ."

In May, 1948, the Zapfs conveyed the new house and lot to Mr. and Mrs. Dielmann. The land was described in material part, as follows:

". . . Commencing at a point on the West line of Thirty-third (33rd) Avenue Two Hundred fifty-six and seventy-five hundredths (256.75) feet south of the south line of Fiftieth (50th) Street; thence west One Hundred Thirteen (113) feet; thence South Forty-one (41) feet; thence East One Hundred Thirteen (113) feet; thence North Forty-one (41) feet to beginning; being known as Lot Seventeen (17), Block Twelve (12) of the First Addition to Kenosha Center, when same is placed on record. . . ."

According to the metes-and-bounds description, the Dielmann property is 41 feet wide (north-south) and the Pavela property is 40 feet wide. According to one surveyor, the north line of the Pavela parcel as described by metes and bounds in the deed would be two feet south of the south line of the Dielmann parcel and the distance from the northern line of the Dielmann property to the southern line of the Pavela property is 83 feet. According to the other surveyor, to whose testimony the circuit court gave greater weight, the distances are 2.55 feet and 83.55 feet, respectively.

The dispute, essentially, is over the effect to be given to the part of the description which refers to the Pavela parcel as lot 18 of block 12 of "First Addition to Kenosha Center, when same is placed on record." The Pavelas claim that said lot 18 is 42 feet wide, rather than 40 feet wide.

In 1916, Joseph Fliesz and his wife and a realty company executed a plat of a subdivision known as Kenosha Center, including Thirty-Third avenue, then known as Hamilton avenue, and a strip of land just east of it. The plat was approved and recorded. Evidently they intended to subdivide a strip of land just west of Thirty-Third avenue in similar fashion, and call it First Addition to Kenosha Center. As early as 1917, Mr. and Mrs. Fliesz conveyed several parcels in the latter area, describing each one by metes and bounds according to government survey, but stating in each case: "This parcel of land shall be known as Lot numbered . . . of Block numbered . . . of the First Addition to Kenosha Center when same is put on record." No plat of that subdivision has ever been recorded.

Plaintiffs' Exhibit No. 2, in evidence over defendants' objection, appears to be a map of the area. It is entitled "Kenosha Center" and shows a series of blocks along each side of Hamilton avenue. Hamilton avenue and the strip along the east side correspond with the recorded plat of

Kenosha Center, and they are so designated on plaintiffs' Exhibit No. 2. The strip along the west side of Hamilton avenue is designated "First Addition." The map shows the division of blocks into lots, shows lot and block numbers, and dimensions of lots. Plaintiffs' Exhibit No. 2 contains no indication of its date or origin. The city assessor, who produced it, testified that it had been used in the assessor's office since 1950, when he first worked there, but that he also knew it had been in the possession of the assessor in 1936 when the witness was employed by the city in a different department. There was no evidence that any of the grantors or grantees in the various deeds had actual knowledge of plaintiffs' Exhibit No. 2.

Except for a discrepancy in the width of lot 18, plaintiffs' Exhibit No. 2 corresponds with the metes-and-bounds descriptions and the lot and block numbers contained on the deeds which appear in this record. The exhibit shows lot 17 as being 41 feet wide, the same as appears in the metes-and-bounds descriptions in the deeds to the Dielmann property. It shows lot 18, however, as being 42 feet wide, two feet more than the width appearing in the metes-and-bounds description of the Pavela property in all the deeds involving that parcel since 1917. If plaintiffs' Exhibit No. 2 be deemed incorporated into the deeds under which the Pavelas claim, then there is a conflict between the width of 40 feet stated in the deed and the width of 42 feet so incorporated. It appears to be the general, though not universal, rule that in such case the dimension shown on the plat would prevail.[1]

If, however, plaintiffs' Exhibit No. 2 is not deemed incorporated by reference, there is nothing in the deeds on which the Pavelas rely to indicate that the property conveyed to them was more than 40 feet wide.

[1] *Zuleger v. Zeh* (1915), 160 Wis. 600, 150 N. W. 406; 11 C. J. S., Boundaries, p. 620, sec. 52 (c) ; Anno. 130 A. L. R. 643; 3 American Law of Property, p. 446, sec. 12.118.

An unrecorded plat or other map referred to in a deed and identified by parol evidence will be treated, at least between the grantor and grantee, as effectively incorporated into the deed.[2] The reference, however, must be definite and certain.[3]

In the case before us, the deed references to the First Addition do not give any particulars by which a plat or map existing at the time the particular deed was given could be identified as the one referred to, other than the name of a proposed subdivision. Although there is evidence that plaintiffs' Exhibit No. 2 was in existence at the assessor's office during the time that many of the relevant deeds were delivered, we consider the evidence insufficient to establish that the various grantors and grantees had it in mind.

Accordingly we conclude that the Pavelas have shown paper title to a lot 40 feet wide, separated by a strip 2.55 feet wide from the lot, 41 feet wide, to which the Dielmanns have established paper title. Undoubtedly neither Mr. and Mrs. Fliesz nor Mr. and Mrs. Zapf intended to retain title to this narrow strip.

The circuit court was of the opinion that it would be equitable to divide the 2.55-foot strip equally between the parties. Such division of land unintentionally omitted from conveyances of adjoining properties is somewhat analogous to the apportionment of discrepancies between the actual measurements of a subdivision and the measurements of the lots therein as shown by the recorded plat.[4] We note that the southern edge of a driveway installed by Zapf when he owned both properties is at the north edge of the 2.55-

---

[2] 3 American Law of Property, pp. 407, 408, sec. 12.104; 1 Fitch, Abstracts and Titles to Real Property, pp. 294, 300, 301, sec. 178; 6 Thompson, Real Property (1963 replacement), p. 606, sec. 3052.

[3] Clark on Surveying and Boundaries (3d ed.), p. 533, sec. 539; Skelton, Boundaries and Adjacent Properties, pp. 8, 9, sec. 13; 6 Thompson, Real Property (1963 replacement), p. 606, sec. 3052.

[4] *Van Deven v. Harvey* (1960), 9 Wis. (2d) 124, 129, 100 N. W. (2d) 587.

foot strip. A garage, constructed by Dielmann, apparently without objection initially by the owners of the Pavela property, does encroach a few inches upon the strip. There was a period during which a fence was maintained approximately along the center of the strip, although this was admittedly part of a convenient enclosure for a small child, rather than for the purpose of marking the boundary. Except for that fence and the fence which the Pavelas erected at the edge of the Dielmann driveway shortly before they brought this action, it does not appear that any structure has been erected upon the 2.55-foot strip. Under the circumstances, we agree that the division made by the circuit court was fair and equitable.

*By the Court.*—Judgment affirmed.