Sheldon H. PEARSON et al., Appellants,

v.

CITY OF GUTTENBERG, Iowa, Appellee.

No. 2–57057.

Supreme Court of Iowa.

Sept. 22, 1976.

O'Connor, Thomas, Wright, Hammer, Bertsch & Norby, Dubuque, for appellants.

Hughes & Leifker by Alfred E. Hughes, Dubuque, for appellee.

Heard by MOORE, C. J., and MASON, RAWLINGS, HARRIS and McCORMICK, JJ.

RAWLINGS, Justice.

Plaintiffs, Charles and Abbie Millham, appeal from trial court adjudication denying their proprietary claim in a quiet title action. We modify and remand with directions.

March 3, 1972, proceedings were commenced below by six homeowners seeking to quiet their respectively asserted titles to residential property located in the east half of block 96 in Guttenberg, a northeast Iowa community. Block 96, located atop a bank or bluff in the eastern part of Guttenberg, overlooks the Mississippi River.

By joint petition said homeowners sought to extinguish defendant's right to a strip of land lying between their residential tracts and the ordinary high water mark. Four of the original action-initiating parties have abandoned their appeals to this court. We therefore confine our review to Millhams' (plaintiffs') action against defendant municipality.

These plaintiffs allege they "are the absolute and unqualified owners in fee simple" of:

"The North Forty (40) feet of Lot Three (3); and the South Twenty-eight (28) feet of Lot Four (4) in Block Ninety-six (96); *also the area, if any,* which lies between said property and the ordinary high water mark on the westerly bank of the

Mississippi River; all in the Town (now City) of Guttenberg, County of Clayton, State of Iowa." (emphasis supplied).

The "area, if any", italicized in the above description, is the subject matter of this litigation. Stated otherwise, plaintiffs contend the strip of land located between their property and the river's edge belongs to them because (1) it is a record title part of block 96, or (2) their right thereto is established by continuous possession and occupancy vis-a-vis municipal abandonment. Under either theory, plaintiffs would be riparian owners. On the other hand defendant insists the eastern boundary of block 96 is a dedicated (although unopened) public street as established by the original Guttenberg plat.

In 1847, Clayton county surveyor John M. Gay surveyed the town. A plat was attendantly filed and duly recorded in 1848. That instrument shows block 96 bordered on the east by a strip of land dedicated for public use as "Water Street" and a "Publick Landing". This is a sketch of the area according to said 1848 plat:

A casual examination of the foregoing diagram reveals block 96 does not extend eastward to the river. Plaintiffs contend, however, the narrow tract designated "Water Street—Publick Landing" has been abandoned by defendant. They further direct our attention to a second plat made in 1905 (discussed *infra*) which allegedly establishes the water's edge as the east boundary of block 96.

By decree entered November 29, 1973, trial court held: (1) the city is not estopped to claim the land in question; (2) it has neither abandoned nor otherwise forfeited title thereto; (3) the "official" plat referred to in plaintiffs' chain of title is the 1848 John M. Gay plat, which has never been vacated despite existence of the conflicting 1905 plat; thus (4) the eastern boundary of block 96 is the line so designated in the 1848

plat. Trial court thereby reaffirmed municipal ownership of the contested tract, even though four homes in block 96 (including a portion of the Millham residence) extend beyond the 1848 plat boundary line, i. e., upon land here in dispute.

Millhams' contentions on appeal are essentially twofold. They first assert ownership of the contested premises by virtue of the 1905 Schecker plat. In final analysis, this contention is one of ownership by record title. Alternatively, plaintiffs maintain defendant is equitably estopped to deny their claimed ownership of land lying between the record title property held by them and the ordinary high water mark.

These contentions will be entertained in the order presented.

■ I. "Because the case stands in equity, our review is de novo. We accordingly give weight to, but are not bound by, trial court's findings. See Iowa R.Civ.P. 334, 344(f)(7)." *Rector v. Alcorn*, 241 N.W.2d 196, 199 (Iowa 1976).

### RECORD TITLE OWNERSHIP

II. Noticeably the 1848 plat clearly established "Water Street" as the eastern boundary of block 96. In 1905, however, another or second plat was made pursuant to a survey by Charles Schecker. Plaintiffs insist the latter shows (1) the city abandoned Water Street along block 96, and (2) the eastern boundary of that block became the water's edge.

As a preface to our consideration of this contention, a more detailed map of block 96 is set forth, *infra* [see p. 524]. Based upon the 1905 Schecker plat, this diagram shows block 96 is bordered on the east by two irregular wavy lines, labeled "High Bank of Mississippi" along the upper (northern) part of the drawing. An ancillary dispute as to the effect of such label is later resolved. The thatched area represents plaintiffs' property as determined by trial court. To the right (east) thereof is the disputed

tract, measuring about 68 feet, north to south. For reasons later disclosed land located between the 1848 plat boundary line and the heavier wavy line is denoted "upland tract". The remainder of the disputed strip, represented by space between the two irregular lines, is labeled "lowland tract".

III. The 1905 Schecker plat is the *sine qua non* of plaintiffs' claimed record title ownership. All deeds comprising their chain of title describe the property conveyed "as designated in the recorded plat thereof", or by similar words of incorporation. Millhams contend "the recorded plat thereof", referred to in all such title instruments since 1905, relate to the Schecker plat. But defendant maintains such references in all of plaintiffs' chain of title instruments are to the 1848 plat, including those executed after filing of the Schecker plat. It is attendantly urged by defendant the latter plat is invalid because of noncompliance with certain statutory procedures governing its recordation.

Resolution of this issue requires a sequential determination of the various defects to which defendant alludes.

■ A. First, defendant offered evidence tending to show the Schecker plat was never actually recorded. Plaintiffs' testimony, including Guttenberg Town Council Minute Book entries from 1903 to 1905 and numerous notations on the first page of the Schecker plat itself, strongly suggest the contrary. Indeed, the recorder's certificate endorsed thereupon is prima facie evidence the document was in fact properly recorded. See *Thompson v. Anderson*, 94 Iowa 554, 557, 63 N.W. 355 (1895).

Despite the fact the county assessor never officially used the 1905 plat and same was not officially indexed in the county recorder's office we assume, arguendo, it was recorded in September 1905. As later demonstrated, however, this alone does not per se aid plaintiffs' cause.

B. Defendant next assails validity of the 1905 plat because it contains no certification of approval by the Guttenberg Town Council. By virtue of § 916, The Code 1897 (in effect when said plat was filed for recordation in 1905), such attestation was a condition precedent to recording. In material part, it provided:

"All plats * * * before being recorded, shall be filed with the clerk of such city or town, and when so filed the council, within a reasonable time, shall consider the same, and, if it is found that such plat conforms to the provisions hereof, the council shall direct the mayor and clerk to certify its resolution of approval, which shall be affixed to the said plat before it shall be received for record by the county recorder."

Moreover, § 917 stated, in relevant part: "When the statement and plat are accompanied with the certificates * * *, they shall be admitted to record, *and not otherwise, and shall be of no validity until so filed for record in the office of the recorder* * * *." (emphasis supplied).

Plaintiffs concede the Schecker plat bears no such certificate of approval, but insist it was actually, if not formally, approved by the town council. Some council minute entries support this view, including a September 5, 1905 resolution "that Chas. Schecker be authorized to have the new town plats recorded." We are told there was thus substantial compliance with the statutes.

■ Admittedly substantial compliance with statutory requirements is generally held sufficient. See 62 C.J.S. Municipal Corporations § 83b. Although plaintiffs contend there was "certainly a substantial compliance", this assertion is open to question. See e. g., *Metropolitan Plan Com'n of Marion County v. State*, 243 Ind. 46, 182 N.E.2d 786 (1962). In any event, standard of compliance is not here determinative because the irregularities cited by defendant were statutorily "cured" by § 592.3, The Code 1971:

"In all cases where, prior to January 1, 1950, any person, persons, or corporations have laid out any parcel of land into town or city lots and the plat or plats thereof have been recorded and the same appears to be insufficient because of * * * a failure to fully comply with all of the provisions of chapter 409 of the Code, 1950, or corresponding statutes of earlier Codes, * * * and, subsequent to such platting, lots or subdivisions thereof have been sold and conveyed, all such said plats which have not been vacated and have been of record for a period of twenty years or more, are hereby legalized and made of full force and effect as of the date of the making thereof the same as though all certificates had been attached and all the other necessary steps taken as provided by law * * *."

See also § 592.2; 32 Iowa L.Rev. 746, 748, n. 26 (1947).

■ In light of this "legalizing act", it is evident the recorded Schecker plat was accorded validity notwithstanding irregularities which attended the filing and recordation thereof. Consequently, we are confronted with two inconsistent plats, both valid in law and neither specifically vacated.

C. So the question now to be resolved is whether plaintiffs acquired their residential property with reference to the 1848 "recorded plat thereof" or, as they contend, the 1905 "recorded plat thereof".

■ It is to be initially understood the validity or invalidity of a plat does not affect the efficacy of a *deed* which describes property conveyed by reference to such plat. In *Young v. Cosgrove*, 83 Iowa 682, 684, 49 N.W. 1040 (1891), this court said:

"Surely, when an instrument is referred to to designate land or give description thereof, we are not required to hold such an instrument valid and regular in order to accept the description it gives. *A void deed or a void plat could well describe lands which could be properly and conveniently referred to for such description in deeds conveying them.*" (emphasis supplied).

And, as explained in 1 Patton, Land Titles, § 120 (2d ed. 1957), quoted in Marshall, Iowa Title Opinions and Standards (Annotated), 14.1(P), at 342 (1963):

"A conveyance by reference to a recorded plat, is not affected by the plat being invalid. This is because the plat, whether valid or invalid, if conclusively identified, is as much a part of the description as would be the case if it were copied into the instrument, or if the data furnished by it were set out in full."

See also 23 Am.Jur.2d, Deeds, §§ 232–233; 26 C.J.S., Deeds, § 100h at 874.

By reason of the fact plaintiffs' chain of title instruments refer only to "the" recorded plat thereof in describing the property conveyed, we must next determine *which* plat is so incorporated by reference. The standard to be applied is well stated in 62 C.J.S. Municipal Corporations § 83a, at 199:

"In case of discrepancy between plats, the one with respect to which lots have been sold will be deemed to be the true and correct one as far as the rights of the owners of those lots are concerned."

The entire problem here presented may be thus reduced to a single question of fact: *Is the plat "with respect to which lots have been sold" the 1848 John M. Gay plat, or the 1905 Charles Schecker plat?* We find no indication the latter was ever employed as a deed-related reference prior to involvement in the instant litigation.

Plaintiffs' abstract of title makes no mention whatsoever of the Schecker plat. Furthermore, the city surveyor found no such signification in municipal or county files. Although the 1905 plat was kept in the county recorder's office, it was used "for reference purposes only". Finally, the county assessor stated, by affidavit, the 1848 plat alone "is used for the purposes of assessing the properties as covered thereby". While plaintiffs insist the assessor's nonuse of the Schecker plat is irrelevant, we must disagree. See *Edwards v. City of Santa Paula*, 138 Cal.App.2d 375, 292 P.2d 31, 35 (1956).

The narrow issue at hand is apparently one of first impression in Iowa, but our factual determination finds ample support in *Pavela v. Fliesz*, 26 Wis.2d 710, 133 N.W.2d 244 (1965). There the plaintiffs' (grantees') deed described their lot as 40 feet in width, adding "said premises to be known as lot eighteen (18) in block twelve (12) of First Addition to Kenosha Center, when same is placed on record". Plaintiffs there introduced an area plat showing their lot was 42 feet wide, "two feet more than the width appearing in the metes and bounds description of the [plaintiffs'] property in all the deeds involving that parcel since 1917." 133 N.W.2d at 247. The plat, however, contained no indication of its date of origin, had not been recorded, and significantly, "[t]here was no evidence that any of the grantors or grantees in the various deeds had actual knowledge of plaintiffs' [plat]." Id., at 246. The question before the court was, as here, whether plaintiffs took their property according to the disputed plat—i. e., was it "incorporated into the deeds under which the [plaintiffs] claim * * *." Answering in the negative, the Wisconsin Supreme Court said:

"An unrecorded plat or other map referred to in a deed and identified by parol evidence will be treated, at least between the grantor and grantee, as effectively incorporated into the deed. *The reference, however, must be definite and certain.*

"In the case before us, the deed references to the First Addition do not give any particulars by which a plat or map existing at the time the particular deed was given could be identified as the one referred to, other than the name of a proposed subdivision. *Although there is evidence that plaintiffs [plat] was in existence at the assessor's office during the time that many of the relevant deeds were delivered, we consider the evidence insufficient to establish that the various grantors and grantees had it in mind.*" 133 N.W.2d at 247 (emphasis supplied).

Similarly, in the case at bar, plaintiffs' chain of title deeds refer to the 1848 plat alone, the *only* "recorded plat thereof" in

existence prior to September 1905. Various deeds thereafter executed impart no indication a different plat was contemplated by reference to "the recorded plat thereof". Briefly stated, any alleged reference to the Schecker plat is hardly "definite and certain". It further appears plaintiffs were unaware of the Schecker plat until shortly before commencement of this action. Compare *Raines v. Village of Alden*, 252 Minn. 530, 90 N.W.2d 906 (1958).

In light of the fact plaintiffs offered no evidence substantiating any claim to the effect their property was purchased in contemplation of the 1905 rather than the 1848 plat, we must reject the theory of ownership by record title advanced by them. This conclusion also comports with the general rule that lines of a senior plat survey will prevail over conflicting lines in a junior survey. See 11 C.J.S. Boundaries § 61.

IV. Parenthetically, if plaintiffs had proved the various post–1905 deeds incorporated the Schecker plat description by reference, they would still not be riparian owners. Even though plaintiffs claim said plat shows the Mississippi River as the eastern boundary of block 96, we agree with trial court's findings to the contrary.

As disclosed by the diagram in Division II, *supra*, the Schecker plat contains two irregular parallel lines between block 96 and the river. Although the plat page on which block 96 is detailed does not so indicate, the same bilinear symbol is labeled "High Bank of Mississippi" along block G (immediately north of block 96) on another page of Schecker's map. For clarification, our diagram indicates this designation adjacent to block G.

In an effort to resolve an apparent labeling inconsistency, defendant introduced testimony by a "realty specialist" for the U.S. Army Corps of Engineers. He opined the heavier wavy line represents the top of the "high bank". This witness also stated the lighter parallel line to the right (east) thereof denotes "the water line of the river or even the bottom of the bank". Upon a careful examination of the entire plat, he concluded Schecker "closed these tracts [i. e., lots 1–8 in block 96] on the easterly side *at the top of the high bank of the Mississippi River*."

Trial court found, and we agree, the foregoing interpretation of the 1905 plat "conforms to all other surveys in evidence at this trial". Resultantly, plaintiffs' assertion that the Schecker plat "established the easterly boundary of [their property] to be the high water mark of the Mississippi River" must be rejected. In other words, evidence adduced at trial, including the Schecker plat upon which plaintiffs lean so heavily, clearly demonstrates there is a strip of land between the rim of the "high bank" and the water's edge which is not part of block 96. From this it follows plaintiffs' claim of riparian ownership status is unfounded because, as later disclosed, their property does not "abut upon a river". See *Peck v. Olsen Constr. Co.*, 216 Iowa 519, 522–523, 245 N.W. 131, 89 A.L.R. 1147 (1931). See also *McCauley v. Salmon*, 234 Iowa 1020, 1022, 14 N.W.2d 715 (1944); *Shortell v. Des Moines Electric Co.*, 186 Iowa 469, 480, 172 N.W. 649 (1919).

Actually, the east-west lot dimensions shown on the Schecker plat extend only to the rim of the high bank, rather than to the river itself—a fact which supports trial court's interpretation of said plat. On the other hand, plaintiffs insist the river is the relevant boundary monument, therefore it should negate and take precedence over inconsistent distance calls. See generally *Park Commissioners v. Taylor*, 133 Iowa 453, 459–460, 108 N.W. 927 (1906); 11 C.J.S. Boundaries § 50c.

If the Schecker plat did show the *river*, rather than the top or rim of the "high bank", as the eastern boundary of block 96, plaintiffs' reliance upon *Taylor, supra*, would be justifiable. But the fact remains the 1905 plat does not establish the Mississippi River as a boundary monument. Consequently, *Taylor* is inapposite. Rather, the circumstances here involved are virtually indistinguishable from those presented in *Turner Subdiv. Property Owner Assoc. v.*

*Schneider*, 4 Mich.App. 388, 144 N.W.2d 848, 850 (1966), where the court said:

> "An examination of defendants' chain of title makes it clear that defendants' premises ran on a metes-and-bounds description 'to the bank of Lake Michigan' and not 'to the lake shore at high water' or any other point on the water's edge. The surveys introduced as exhibits clearly indicate that the water is and was a substantial distance from the bluff or bank upon which defendants' home is located. Whoever owns property in actual contact with the water is considered the true riparian owner because the 'basis of the riparian doctrine, and an indispensable requisite to it, is actual contact of the land with the water.' [Citation]. Defendants, therefore, cannot be considered riparian owners."

Further discussion is unnecessary. Plaintiffs' claim of ownership by record title is without merit.

## ESTOPPEL

V. The Millhams alternatively maintain defendant is equitably estopped from claiming the eastern boundary of block 96 is the line so designated in the 1848 John M. Gay plat. It is correlatively argued defendant may not assert a right to any land between said boundary and the water's edge.

Before addressing the merits of plaintiffs' instant contention, certain peculiarly applicable ground rules must be articulated.

A. Although plaintiffs raise abandonment and estoppel claims in separate divisions of their brief, the record justifies our election to here consolidate those related theories for purpose of discussion. Admittedly abandonment and estoppel are distinct concepts. See *Town of Marne v. Goeken*, 259 Iowa 1375, 1382, 147 N.W.2d 218 (1966); 1 C.J.S. Abandonment § 2b(8). But similar factors come into play when determining whether a municipality has abandoned its property or is estopped to assert rights therein. See e. g., *Sioux City v. Johnson*, 165 N.W.2d 762, 766–769 (Iowa 1969).

B. It must next be emphasized that only two of the original six plaintiffs below now remain before this court. To paraphrase *Hagenson v. United Telephone Company of Iowa*, 209 N.W.2d 76, 81 (Iowa 1973), absent appeal by Pearsons, Mrs. Hall and Dr. Meder, the Millhams cannot contest trial court's decree as it may have adversely affected the formers' rights; they must show prejudice resulted to their own position. Conversely, those who have abandoned their appellate remedy are, of course, bound by trial court's adjudication: "[N]ot having appealed, [they] cannot be granted any relief by this court * * *." *Read v. Gregg*, 215 Iowa 792, 799, 247 N.W. 199, 202 (1933). Our review is accordingly restricted.

C. Principles of estoppel governing cases of this kind are aptly summarized in *Sioux City v. Johnson, supra,* and need not be here repeated. See also *Manson State Bank v. Diamond*, 227 N.W.2d 195, 201 (Iowa 1975), and citations; cf. *Anthony v. Anthony*, 204 N.W.2d 829, 834 (Iowa 1973).

D. Next noted is a matter which facilitates disposition of this appeal. As manifested, *supra*, the 1848 plat shows the east side of Guttenberg was once bordered by a strip of land labeled "Water Street" immediately adjacent to the riverfront tracts, including block 96. Further east, however, is a strip designated "Publick Landing".

By contrast, no mention is made of a public landing on the 1905 plat. And, as shown by the diagram in Division II, *supra*, the latter retains the "Water Street" area east of the platted riverfront blocks (except along block 96). Then too, the first page of the multileaf Schecker plat contains this endorsed "explanation" by Charles Schecker: "The Streets are 60 feet wide * * * *except* water street along the Mississippi, being of different width according to the river bank * * *."

Schecker's explanation of his drawing means Water Street was located entirely atop the bank, except for Block 96, where the street had apparently been abandoned and became part of lots 1–8. In the same diagram, that portion of abandoned Water

Street adjoining Millhams' property is generally denoted "upland tract".

The remainder of the area in controversy consists of the face or slope of the "high bank" and the shoreline strip at its base. Considering both plats together, we find this strip corresponds to the area labeled "Publick Landing" on the 1848 plat.

 In brief, the topography of the land helps explain why the 1848 plat designated the strip between block 96 and the river for *two separate public purposes*. The area west of the bank's rim ("upland tract") is relatively level and suitable for use as a street or thoroughfare. On the other hand, the land immediately east of the rim (labeled "lowland tract" in our diagram) slopes steeply toward the river, having little or no utility as a street absent extensive artificial grading and filling. This "lowland tract" is well-suited, however, for use as a "public landing"—i. e., an area along the shore or margin of a river, dedicated to and held in trust for public use in the transfer of persons and goods between land and water. See generally 35 Words and Phrases, "Public Landing", at 253–254 (1963 perm. ed.).

Plaintiffs' instant assignment is therefore considered in two parts, corresponding to the respective public uses for which the disputed tracts were originally dedicated.

VI. The *"Upland Tract"*. Plaintiffs assert ownership of the land atop the "high bank" for essentially three reasons. Millhams first argue defendant abandoned its right to Water Street along block 96. They assert title thereto by virtue of substantial improvements and uncontested use and occupancy of the "upland tract" by them and their predecessors in title for over seventy years. These plaintiffs also contend defendant recognized the edge or rim of the bank as the true property line in a 1971 eminent domain proceeding.

Those claims are considered in the order set forth above.

 VII. As to abandonment, this court summarized applicable rules in *Sioux City v. Johnson*, 165 N.W.2d at 766–767:

"That an established highway may be abandoned by the public and its rights therein lost is settled. [Citations]. * * * Abandonment develops because the owner no longer desires to possess the thing. [Citation]. In order to establish abandonment of property, actual acts of relinquishment accompanied by intention to abandon must be shown. * * * [T]he primary elements are the intention to abandon and the external act by which intention is carried into effect. [Citations]."

Turning to the record, there is no evidence disclosing Water Street was ever opened along block 96 as contemplated by the 1848 plat. A 71 year resident of Guttenberg testified, "I don't ever recall there being a road and that is not a public road."

 Our independent review of the record compels a finding of public nonuser of the upland tract for many years. While "[m]ere nonuser, of course, is not sufficient to establish a relinquishment of title or ownership", Id., at 767, it is properly considered with other circumstances as evidence of abandonment. See generally 1 Am.Jur.2d, Abandoned, Lost, Etc., Property § 41; 1 C.J.S. Abandonment §§ 3b(2), 4b and 7c.

 In this case plaintiffs have shown more than mere nonuser. Procedural irregularities notwithstanding, there is evidence disclosing the Guttenberg Town Council actually approved the Schecker plat in 1905, and that instrument demonstrates an intent to abandon or relinquish Water Street east of block 96. Moreover, the 1905 plat appears to be, as plaintiffs maintain, "consistent with the actual possession and use of the east half of block 96 as it was possessed and used in 1905", when a lumbermill occupied the entire block.

 VIII. Plaintiffs' next argument is, in essence, a claim of title through adverse possession. In *Council Bluffs Sav. Bank v. Simmons*, 243 N.W.2d 634, 636 (Iowa 1976), a case involving land along the Missouri River, we said:

"To establish title by adverse possession, one must prove open, exclusive, continuous, actual and hostile possession under claim of right or color of title for at least 10 years. [Citations].

"Color of title and claim of right are alternatives and 'either will suffice'. [Citation]."

See also *I–80 Assoc. v. Chicago, Rock Island & Pac. R.,* 224 N.W.2d 8, 10 (Iowa 1974). But see *Sioux City v. Johnson,* 165 N.W.2d at 770.

Like the plaintiff in *Council Bluffs Sav. Bank, supra,* Millhams "acted in a manner clearly asserting [they] claimed title", and their "conduct is consistent only with a claim of ownership." 243 N.W.2d at 636.

Manifestly, defendant has never utilized the upland tract for its dedicated street purpose. The record shows without contradiction it was occupied from at least the turn of the century by various private owners. Eberhardt Lumber Company utilized the area for business purposes until 1933, when fire destroyed the structures thereon. Regardless of the fact there is little evidence showing how the upland tract was used immediately after the fire, the record does reveal two couples purchased the eight lots comprising the east half of block 96 in 1946. Several new homes were built on these tracts between that date and 1954. In 1949, Millhams purchased their home (on the north 40 feet of lot 3 and the south 28 feet of lot 4) for $12,000. A board fence along Millhams' south property line extends eastward to the bank's rim. Shrubbery has been planted along the north-east corner of the disputed tract near the edge of the bank. Also, a portion of plaintiffs' home extends a few feet beyond the 1848 plat boundary line.

Three other homes in block 96 also encroach to varying degrees beyond said boundary. In fact, Dr. Meder's residence (lot 8) stands almost entirely east of that line. Furthermore, other homeowners in the block, like Millhams, have erected fences, planted hedges and shrubbery, or otherwise improved the land west of the bank's edge without objection by defendant.

Additionally, all homes in the east half of block 96 are fully assessed even though portions thereof encroach upon property here in controversy.

Briefly stated, plaintiffs have "take[n] and maintain[ed] such possession and exercise[d] such open dominion as ordinarily marks the conduct of owners in general in holding, managing, and caring for property of like nature and condition." *Council Bluffs Sav. Bank, supra,* at 637, quoting *Moffitt v. Future Assurance Associates,* 258 Iowa 1160, 1171, 140 N.W.2d 108 (1966) [supplemental opinion, 141 N.W.2d 776 (1966)].

IX. Plaintiffs' third theory of ownership arises from a 1971 condemnation proceeding instituted by defendant for a "temporary easement for right to work and storage area", in connection with construction of a flood wall along the riverbank. A survey and plat of block 96 were made and approved by defendant prior to commencement of said condemnation action.

According to said condemnation plat, a tract measuring 14.65–16.69 feet in width on the north and south, respectively, was taken for right to work usage along the easterly part of the "upland tract" adjoining Millhams' property. The east boundary of the condemned strip, *all of which lies more than thirty feet east of the 1848 plat boundary line,* is the rim of the bank, as surveyed in 1971 according to markers set by Charles Schecker more than seventy years ago.

Plaintiffs maintain defendant is now estopped by admission to claim the true boundary of their property if fixed by the 1848 plat. Since condemnors do not, as a rule, pay damage awards for land already owned, even for a temporary easement, Millhams assert defendant has admitted their ownership of all property west of the "property line" in defendant's condemnation plat.

Defendant attempted to explain the inconsistency of its position via testimony of

its surveyor, Harold Blessing. In preparing his survey and plat, Blessing utilized all known records and plats, including the 1905 Schecker plat. In block 96, said plat showed more land than the 1848 plat, so Schecker's plat was used to determine the property line along that block. By contrast the 1848 plat was employed in order to delineate the property line on the east edge of block G (immediately north of block 96) because it indicated more land than did the 1905 plat. The objective in each instance was, as explained by Blessing, "to give these property owners the most possible land that they could have due to the difference of the two plats."

In brief, defendant now asserts it should not be estopped by its own generosity in according plaintiffs the benefit of a doubt to which they were never legally entitled.

■ Applying the various principles of estoppel set forth in Sioux City v. Johnson, supra, this court finds the evidence adduced at trial sufficed to sustain plaintiffs' instant contention. It is to us apparent the "upland tract" has been long since abandoned by defendant.

Whether defendant's motive in preparing the condemnation plat was altruistic, as Mr. Blessing's testimony suggests, is relatively unimportant. This court is persuaded defendant's conduct with respect to the "upland tract" has been historically consistent with plaintiffs' claim of private ownership. Hence, it is inequitable for the city to now rely, apparently for the first time, upon the 1848 plat designation of Water Street as the eastern boundary of block 96, especially since Water Street has never been opened adjacent thereto. Compare Kelroy v. Clear Lake, 232 Iowa 161, 168–174, 5 N.W.2d 12 (1942).

Manifestly, plaintiffs have established adverse possession thereof pursuant to abandonment under claim of right for at least ten years absent objection by defendant. See Council Bluffs Sav. Bank v. Simmons, supra.

We now conclude trial court erred in reaffirming the 1848 plat boundary line as the eastern boundary of Millhams' property. The 1971 condemnation survey established a more realistic "property line". It is thus evident, and we now hold, Millhams' property rightfully extends east to the bank's rim, the area heretofore denominated the "upland tract". Trial court's decree must be accordingly modified.

But the foregoing is not alone dispositive. Another question posed is whether Millhams own any of the property lying between the above designated tract and the Mississippi River or lowland tract, formerly identified as a public landing.

X. The *"Lowland Tract"*. From the turn of the century until 1933, the east half of block 96 was, as aforesaid, used by Ed Eberhardt for lumbermill operations. There is some evidence, although confused and hardly compelling, that the lumber company's use and occupancy extended to the water's edge.

A small office building, occupied by Eberhardt, stood near the foot of the bank. It was converted into a cottage after 1933 when the lumbermill was destroyed by fire. Approximately fourteen years later the latter structure was moved to another separate block. Shortly thereafter a platform, used by Millhams and Mrs. Hall as an "observation deck", was placed atop the remaining cement foundation. Both Millhams and Mrs. Hall installed water pumps beneath the platform in order to utilize subterranean wells serving their homes.

In addition to this combined "pump house" and "observation deck", situated east of lot 4 and bisected by the eastward extension of the Millham-Hall property line, certain other improvements were effected on the "lowland tract". Former owners erected a concrete wall on the bank slope. Millhams reinforced this wall with a rock face at an estimated cost of $100. Finally, Mrs. Millham testified they "regularly" replaced a stairway leading from the top of the bank down to the bottom of the pump house.

As trial court found, Dr. Meder made the most extensive improvements to the area east of the bank's rim by constructing a

boathouse and seawall. Mrs. Hall built an attractive rock wall on the face of the bank after extending her property usage eastward along the top of the bank by use of fill dirt. A similar artificial extension of Millhams' property apparently resulted from construction and reinforcement of their wall.

Plaintiffs' claim of continued use, possession and occupancy of the "lowland tract" for "purposes inconsistent with public use thereof and to the exclusion of public use" is unconvincing, and certainly insufficient to create an estoppel. While defendant never objected to the various improvements made on this tract, it is significant that building permits therefor were neither sought nor issued. See *Sioux City v. Johnson*, 165 N.W.2d at 769. Moreover, plaintiffs have paid no taxes on such improvements. Conceding payment of taxes is not essential to acquisition of title by adverse possession, it still remains Millhams' failure to pay any taxes on the lowland tract is a circumstance bearing upon their good-faith claim of right. See *Grosvenor v. Olson*, 199 N.W.2d 50, 52 (Iowa 1972), and citations. And, except for the well pump, Millhams' use of the lowland tract has been for recreational purposes, but not to exclusion of the public. Trial testimony to the effect no one has ever been prevented from using the beach indicates plaintiffs predominantly, though not exclusively, had private usage of the lowland tract.

Unlike the upland tract, however, there is no evidence disclosing conduct by defendant, affirmative or otherwise, which tends to establish abandonment of the instantly involved area. If anything, the record supports a contrary conclusion. Illustratively, municipal approval of the Schecker plat in 1905 cannot be construed an act of abandonment as to the lowland tract, for it plainly reveals such was not deemed a part of block 96. As defendant correctly notes, the 1905 plat "does not show an intention to abandon the public area east of the high bank of the river as it then existed."

Plaintiffs further insist defendant never asserted its rights in the involved premises until a flood protection plan was undertaken in 1971. Defendant disagrees, and in so doing refers to a 1937 federal eminent domain proceeding by which the United States condemned certain lands in Clayton County to facilitate "the operation and maintenance of Mississippi River Lock and Dam No. 10 and appurtenant works thereto." A flowage easement ("Tract No. FIa–6") was condemned along the water's edge east of block 96. This existing easement is approximately 26 feet wide, running parallel to and between the river and the bank's rim.

Defendant was served notice as a party-defendant in the aforesaid action and awarded nominal damages for the condemned easement. By receipting for damages defendant maintains it was not only recognized as the owner of the lowland tract but also manifested an intent to retain its record title thereto.

Plaintiffs mount an elaborate attack on relevancy of the 1937 federal proceedings, contending they are not bound thereby because of an alleged mistake in the government's title search. This error, we are told, resulted in failure to properly serve notice on plaintiffs' predecessor in title, Menasha Wooden Ware Corporation, record owner at the time.

Although plaintiffs' argument may be factually correct, we need not explore the jurisdictional defects they here allege. At best, their contention means only that Menasha Wooden Ware Corporation *might* have claimed ownership of the lowland tract, and if so, such claim *might* have been upheld. Be that as it may, neither possibility alters the fact that defendant appeared in the condemnation action to protect its record title to the beachfront property condemned. By receipting for damages, the city asserted its right of ownership, albeit passively. Such municipal action is inconsistent with plaintiffs' claim to the effect defendant abandoned the lowland tract.

To recapitulate, our independent review of the record discloses insufficient evidence to support plaintiffs' estoppel contention

with respect to the lowland tract. To the extent trial court confirmed defendant's title to this land, the adjudication below stands affirmed.

XI. Noticeably, plaintiffs' prayer for equitable relief seeks "issuance of a decree quieting title in appellants *to the high water mark of the Mississippi River*". Our disposition of this appeal demonstrates the relief sought is, quite literally, too broad. But this court is not confined by the "all-or-nothing nature of plaintiffs' demand. In an action of this nature a court may "grant any relief which appear[s] to be equitable upon the facts pleaded and proved, even though such relief ha[s] not been specifically demanded." *Reiger v. Turley*, 151 Iowa 491, 499, 131 N.W. 866, 869 (1911). Moreover, "[t]he fact that plaintiff has prayed for more relief than he is entitled to does not preclude an award of such part thereof as is warranted by the pleadings and proof." 30A C.J.S. Equity § 607, at 688. See also *Chadek v. Alberhasky*, 253 Iowa 32, 36, 111 N.W.2d 297 (1961); 27 Am.Jur.2d, Equity, § 247; 61 Am.Jur.2d, Pleading, § 123, at 554; 71 C.J.S. Pleading § 95a, at 237–238; cf. *Holden v. Construction Machinery Company*, 202 N.W.2d 348, 363–364 (Iowa 1972).

XII. Upon the basis of our de novo review we hereby modify the adjudication from which this appeal is taken and remand with directions that a decree be entered consistent with this opinion.

Costs are taxed to defendant.

MODIFIED AND REMANDED WITH DIRECTIONS.