# IN THE COURT OF APPEALS OF IOWA

No. 24-1986
Filed December 17, 2025

**DAVID LEON CLODFELDER and ANN LOUISE CLODFELDER,**
  Plaintiffs-Appellants,

**vs.**

**DARREN J. STARMAN and JENNIFER L. STARMAN,**
  Defendants-Appellees.
_____

  Appeal from the Iowa District Court for Warren County, David Faith, Judge.


  Landowners in a boundary dispute appeal the district court's ruling denying their claims for relief.  **AFFIRMED.**


  Christina I. Thompson of Phil Watson, P.C., Des Moines, for appellants.

  Randall L. Jackson of Ellis Law Offices, P.C., Indianola, for appellees.


  Considered without oral argument by Ahlers, P.J., and Chicchelly and Sandy, JJ.

**SANDY, Judge.**

This appeal concerns a boundary dispute between adjoining landowners—David and Ann Clodfelder on one side and Darren and Jennifer Starman on the other. The Clodfelders filed a petition to quiet title in October 2023, asking the court to declare the boundary in their favor. The district court denied the Clodfelders' claims for relief, and the Clodfelders appealed.

## I. Background Facts and Proceedings.

The Clodfelders and Starmans own adjoining pieces of property in Indianola. The Clodfelders own the northern parcel, called "Lot Thirteen," while the Starmans own the southern parcel, called "Lot Twelve." The Clodfelders purchased Lot Thirteen in 1972, while the Starmans purchased Lot Twelve in 2002. The Clodfelders purchased the parcel to the north of Lot Thirteen, called "Outlot X" in 1985. Both Lot Twelve and Lot Thirteen are described within the Plat of Green Hills, which was recorded in 1964. This 1964 plat is the senior plat of these properties recorded with the Warren County Recorder's Office. At trial, the Clodfelders pointed to an unofficial 1980 plat that showed Lot Twelve to be eighty feet wide north-to-south.

In the 1964 plat, both Lot Twelve and Lot Thirteen are described as having an eighty-five-foot frontage and lot dimensions of eighty-five feet north-to-south by one-hundred and fifty feet east-to-west. The Warren County Assessor's parcel report for the Starmans' property also shows the dimensions of Lot Twelve as eighty-five feet by one-hundred and fifty feet. The Starmans have paid property taxes based on those dimensions. All previous title transfers described the boundary of Lot Twelve as they are described in the 1964 plat.

In November 2021, Starmans conducted a retracement survey. The survey was performed by Chad Daniels, a licensed professional land surveyor. The survey referenced the eighty-five-foot property lines and found the combined property line was somewhat shorter than originally platted—about one foot less on the west and nine inches on the east to each lot owner. In December 2021, the Starmans erected a fence for their dog along the boundary of Lot Twelve and Lot Thirteen as established by the retracement survey. The Clodfelders initially agreed, somewhat reluctantly, to the erection of the fence. Mr. Clodfelder testified to saying, "I do not have time in two weeks to have a survey done, so, therefore, go ahead and build your fence, but I'm going to find out how I lost five feet of my property." The Clodfelders filed their petition to quiet title shortly thereafter.

## II. Standard of Review.

The parties have previously agreed that the claims before us would be tried in equity. Cases tried in equity are reviewed de novo. *Woods v. Charles Gabus Ford, Inc.*, 962 N.W.2d 1, 5 (Iowa 2021). We make our own legal and factual conclusions and are not bound by the trial court's conclusions under a de novo review. *Id.* We give "great weight" to trial court's findings, as the trial court is in a much better position to weigh the credibility of witnesses than we are. *Sundance Land Co., LLC v. Remmark*, 8 N.W.3d 145, 150 (Iowa 2024) (citation omitted).

## III. Discussion.

### A. Alleged Plat Error

The Clodfelders first argue they adequately proved the original boundary line was marked by a gully between the lots, which would make Lot Twelve eighty feet north-to-south. The party seeking to establish a boundary line that is different

than the boundary set forth in the original plat bears the burden of proof by clear evidence. *Id.* at 150. In Iowa, "the general rule [is] that lines of a senior plat survey will prevail over conflicting lines in a junior survey." *Pearson v. City of Guttenberg*, 245 N.W.2d 519, 527 (Iowa 1976).

There are two plats at play in this case: the 1964 and the 1980 plat. The 1964 plat states that Lot Twelve is eighty-five feet north-to-south, while the 1980 plat does not give exact north to south measurements of Lot Twelve or Lot Thirteen. In the absence of clear evidence showing otherwise, the 1964 plat must prevail since it is the more senior plat.

The Clodfelders argue that the 1964 plat contains a scrivener's error, and that it should list Lot Twelve as being eighty feet north-to-south. The Clodfelders point to several documents that show Lot Twelve should be eighty feet north-to south, most notably the 1980 plat. However, the 1980 plat does not actually give individual north-to-south measurements of the lots.

The Clodfelders argue that the numbers do not add up, and that the total frontage of Lot Thirteen and Outlot X combined should be one-hundred and ten feet based on the 1980 plat. Given that the 1980 plat does not show Lot Twelve or Lot Thirteen's individual north-to-south footage, and since the 1964 and 1980 plats supposedly contradict one another, we must defer to the most senior plat. *Id.* The 1964 plat is the most senior in this case, and it lists Lot Twelve as being eighty-five feet north-to-south. The Clodfelders have failed to meet their burden and present clear evidence that the more senior survey should be disregarded.

### B. Boundary by Acquiescence

The Clodfelders argue, in the alternative, that a boundary by acquiescence was established. Boundary-by-acquiescence claims are governed by Iowa Code section 650.14 (2021), which states "[i]f it is found that the boundaries and corners alleged to have been recognized and acquiesced in for ten years have been so recognized and acquiesced in, such recognized boundaries and corners shall be permanently established."

To establish a boundary by acquiescence, the Clodfelders must show they and the Starmans own adjacent properties, and that for a period in excess of ten years, the Clodfelders and Starmans and/or their predecessors-in-title mutually recognized, acknowledged, and treated a line as the boundary between the properties, either definitively by a fence or in some way. *Ollinger v. Bennett*, 562 N.W.2d 167, 170 (Iowa 1997); *Paseka v. Weaver Farms Ltd. Liab. Co.*, No. 03-0417, 2004 WL 573788, at *2 (Iowa Ct. App. Mar. 23, 2004).

The Clodfelders point to several physical characteristics of the properties in making their argument. There is a physical gully between the two houses "at approximately this eighty-foot mark," and that gully lines up with "a double-width cut in the sidewalk." Further, the grass that grows on the northern side of the gully is a different type of grass than the grass on the southern side of the gully. The Clodfelders argue that they presented clear evidence that the gully was honored by the owners of Lot Twelve and Lot Thirteen from 1972 until 2021, thereby making Lot Twelve eighty feet north-to-south. The Clodfelders rely greatly on trial testimony of the parties' mowing habits to try to show that a boundary by acquiescence was established.

However, we agree with the district court's conclusion that this testimony is inconclusive and does not clearly establish a boundary by acquiescence. Mr. Starman testified that he sometimes mowed to the north of the gully, and Mr. Clodfelder conceded that he and Mr. Starman both sometimes mowed beyond their respective sides of the gully. This does not read to us as parties recognizing and treating the gully as a boundary. Further, Chad Daniels testified at trial as an expert in his capacity as a professional surveyor. The district court found that Daniels "credibly testified" that "he had never seen a gully used as a boundary, that it would not be a monument he would rely upon as a boundary, and that he did not notice it when conducting his survey." We take the district court's credibility determinations seriously and give them great deference since the district court had a front-row seat to the live testimony, while we are limited to a cold record. *Higdon v. Rana*, No. 23-1107, 2024 WL 4370048, at *7 (Iowa Ct. App. Oct. 2, 2024).

We find the evidence presented by the Clodfelders and the trial testimony inconclusive at best. Therefore, the Clodfelders have not met their burden of clear evidence proving a boundary by acquiescence was established.

## C. Adverse Possession

The Clodfelders contend they established ownership of the disputed property by adverse possession. "A party claiming title by adverse possession must establish hostile, actual, open, exclusive and continuous possession, under claim of right or color of title for at least ten years." *C.H. Moore Tr. Est. v. City of Storm Lake*, 423 N.W.2d 13, 15 (Iowa 1988). "The doctrine of adverse possession is strictly construed because the law presumes possession is under regular title."

*Louisa Cnty. Conservation Bd. v. Malone*, 778 N.W.2d 204, 207 (Iowa Ct. App. 2009).

In addressing the Clodfelder's argument for adverse possession, the district court gave this well-reasoned analysis:

> Having found the evidence insufficient to show mere acquiescence, it is even more insufficient to show hostile, exclusive and continuous possession. Lawn mowing, for instance, is not a clearly hostile act inasmuch as parties mowed each other's driveways on occasion in an act of neighborliness. Putting up a fence on another's property would be hostile, but in this case, it is not the [Clodfelders] who put up the fence or erected any other sort of structure that might be read as asserting ownership over the disputed strip of land. There is no credible proof of adverse possession.

Following our de novo review, we agree with the district court's analysis on the adverse possession issue. The Clodfelders are unable to point to any hostile act besides the occasional (and hardly hostile) act of lawn mowing across the gully. There is insufficient evidence to support the Clodfelder's claim of adverse possession.

### D. Trespass

The Clodfelders argue that if they are successful in any of their three arguments above, the Starmans' fence would be trespassing onto land owned by the Clodfelders. The general rule is that "[e]very unauthorized entry is a trespass, regardless of the degree of force used, even if no damage is done, or the injury is slight. It will be presumed that injury resulted even if it was no more than the trampling of herbage." *White v. Harkrider*, 990 N.W.2d 647, 654 (Iowa 2023) (cleaned up).

Because the Clodfelders fail on their above claims, the Clodfelders cannot succeed on their claim of trespass.

**IV. Conclusion.**

The Clodfelders failed to show that there was an error in the 1964 plat, that a boundary by acquiescence was established on the disputed land, or that they adversely possessed the land.  And because the Clodfelders did not succeed on any of their other claims, their claim of trespass also fails and we further decline to award their requested attorney fees.

**AFFIRMED.**